## Case No. 12,389.

### SAVARY et al. v. LAUTH.

[1 MacA. Pat. Cas. 691.]

Circuit Court, District of Columbia. Aug., 1859.

PATENTS — INTERFERING APPLICATIONS — LACHES AND ABANDONMENT.

[A delay of over four years after perfecting an invention before filing an application, during which time another has invented the same thing, promptly applied for a patent, and manufactured and placed on sale large quantities of the new article, in the region of the first inventor's residence, is sufficient to bar the first inventor's right to a patent.]

[This was an appeal by Richard and Dennis Savary from a decision of the commissioner of patents, in interference, awarding a patent to Bernard Lauth, and refusing the application of appellants.]

Munn & Co., for appellants.
R. W. Fenwick, for appellee.

MORSELL, Circuit Judge. The application and specification of Lauth is dated the 8th of March, 1858, and filed the 12th of March, 1858; that of the Savarys, dated the 31st of July, 1858, filed the 6th of August, 1858. The appellants claim their invention to have been discovered by them in the spring 1854. January, 1858, appears to have been the earliest period of Lauth's discovery. The inventions, I think, are identical, judging from the specifications stating and describing the claims of each of the parties. The commissioner refused to grant a patent to the appellants, and awarded priority of invention to the appellee, upon the ground of insufficiency of the testimony on the part of the appellants to sustain their claim; to which a number of reasons of appeal were filed. These and all the papers and evidence in the cause have been laid before me, and due notice of the time and place given to the parties, who accordingly appeared by their respective advocates, and filed their arguments in writing, and submitted the case. The appellee has raised an issue on a collateral point, in which it is contended that if the appellants had a

right, as contended for by them, they have forfeited it by their negligence. The language is, "Does not the appellants' conduct create an equitable estoppel against them as regards Lauth? They were undoubtedly aware of his application, and also of the fact of his continued, extensive, and expensive experiments; that he was engaged in a bitter and prolonged contest with Cuddy for this invention, involving loss of time and the expenditure of large sums of money, and yet they interposed no claim, nor gave Lauth warning that they intended to apply for a patent. These considerations, together with the selfish conduct of the appellants towards the public, should postpone their claims." A decision by me in the case of Ellithorp v. Robertson [Case No. 4,409], is cited as authority. The appellants' counsel in reply says: "It is difficult to perceive why Lauth's counsel should have referred to Mr. Curtis, who does not give the slightest countenance to the pretensions which they set up in behalf of their client, which is also true of the other authorities to which they refer. upon any other hypothesis than that they have fallen into the common error, as it is apparent they have, of applying to the case of two interfering applicants for a patent [neither of whom has a patent] the principles which are applicable to the case of a prior inventor who is asking to invalidate a patent already granted, and the patentee of which is prima facie the prior inventor in virtue of the grant itself. Here neither party has a patent, and there is no presumption of law either in favor of or against either party. It is a simple question of fact as to who was the prior inventor of the invention claimed in the two applications." In another part of the case it is denied that there is any evidence of the knowledge by the appellants of the facts as above alleged. It is also stated by the appellants, and not denied, that Lauth promptly applied for the protection of his invention, and as promptly, and with considerable expense to himself, introduced it into general and extensive sale. If the solution of the question raised by this defense depended on the right acquired by the appellee, or whether the evidence proves an abandonment in the general ordinary sense of the term, in which intention forms an essential feature, I should feel no difficulty in overruling the objection; but there is another party—the public—whose interests may be affected, on behalf of whom the various statutes have prescribed certain previous conditions and prerequisites which must be strictly fulfilled before the inventor can be placed in a condition to claim the right to a patent, and this irrespective of intention, which may be termed a statutory bar. The counsel for the appellants contends that the appellants cannot be accused of laches in making their application so long as they have made it before the grant of a patent to any one else. This principle cannot be conceded. The consideration given for the monopoly is that the public shall have the full and free benefit and knowledge of the invention at the expiration of fourteen years from the date of the invention. The design of the law is that the earliest knowledge and use of the invention by the public, consistent with the just and reasonable rights of the inventor, should be obtained, and protection will not be given from dangers happening from unnecessary delays on the part of the inventor after he has perfected his invention and before his application for a patent; as, (among many others,) if in such interval a subsequent discoverer of the same invention should put the public in possession of the knowledge and use thereof, how could such inventor, lying by for years, and suffering such use in public by another, be in a condition to offer a quid pro quo to the public—how could he say it was not known to others? And further, the spirit of the objection being that the invention is known by others and in public use, how can it be material whether the person so making it known and putting it into public use be a patentee or not? The material question in these kinds of cases is not so much whether the appellee was entitled as whether the party appellant is so. He must make out a perfect claim to recover.

The positions which have been thus stated, I think, will be fully sustained by the statutes on the subject and the constructions given to them to be found in the decisions of the supreme court; in each of them it is made a condition precedent to the obtention of a patent by the applicant that the said invention was "not known or used by others in public," or, in other words, in public use. The language of the statute of 1836 is, "not known or used by others before his or their discovery or invention thereof, and not at the time of his application for a patent in public use or on sale with his consent or allowance as the inventor or discoverer." The fifteenth section declares that if the thing patented "had been in public use or on sale with the consent and allowance of the patentee before his application for a patent," judgment shall be rendered for the defendant with costs. That at the time of the application for a patent in this case by the appellants the invention was not new as to public use and exercise, is clear. Was it then known or exercised by others before, with their consent or allowance? There is no express or direct proof of this fact; but how are the circumstances? The appellee in the interval between the time when the appellants say their invention was perfected in the year 1854 and the time of filing their application for a patent, and without any notice of the claim of the appellants, discovered in substance the same invention, and immediately filed his application for a patent, and a similar application was made by one Cuddy, and an interference declared, and testimony directed to be taken. Many of the witnesses resided in Pittsburgh, where for some length

of time the examinations by the parties were carried on. This proceeding, from its nature, must have been public and notorious—the places of the residence of the appellants were, one at Wheeling, the other at Steubenville, but a short distance from Pittsburgh—after which the trial took place before the commissioner upon the evidence so taken in the usual public way, and resulted in favor of the appellee, and the commissioner awarded to him priority of invention and a patent for his invention. A specification was filed stating his invention, a resort to all which might have been had, it is presumed; and before and at the time of this proceeding a great quantity of this new manufacture was publicly made at appellee's mill in Pittsburgh, and sent to near and distant market-places for sale. These are strong circumstances to raise the presumption that appellants knew or might have known of appellee's use and sale in public of the invention; yet they failed to give public notice or file their application for a patent until September, 1858, thus suffering the public use and sale aforesaid. The appellants kept their invention a secret for years, until an independent inventor, having fortunately discovered substantially the same invention, had used it in public and sold the new manufacture, without any other apparent reason than the determination to keep their invention a secret, thereby forfeiting that protection which by due diligence they might have had. If such is the result of the facts, then the principles laid down by the supreme court in the case of Shaw v. Cooper, 7 Pet. [32 U. S.] 292, although a decision before the act of 1836 [5 Stat. 117], and under a statute somewhat different in its provisions, are applicable, on which I shall content myself to rely for authority. At page 318 in the opinion there is this passage: "The true construction of the patent law is—the court say in Pennock v. Dialogue, 2 Pet. [27 U. S.] 19—'that the first inventor cannot acquire a good title to a patent if he suffers the thing invented to go into public use or to be publicly sold for use before he makes application for a patent.'" At page 319, speaking of the policy of the government, the court say: "Vigilance is necessary to entitle an individual to the privileges secured under the patent law. It is not enough that he should show his right by invention, but he must secure it in the mode required by law. * * * And if the invention, through fraudulent means, shall be made known to the public, he should assert his right immediately, and take the necessary steps to legalize it." Again: "No matter by what means an invention may be communicated to the public before a patent is obtained, any acquiescence in the public use by the inventor will be an abandonment of his right." Page 321: "The acquiescence of an inventor in the public use of his invention can in no case be presumed where he has no knowledge of such use; but

this knowledge may be presumed from the circumstances of the case; and if the inventor does not immediately after this notice assert his right, it is such evidence of acquiescence in the public use as forever afterwards to prevent him from asserting it." Again, same page: "If his invention has been carried into public use by fraud, but for a series of months or years he has taken no steps to assert his right, would not this afford such evidence of acquiescence as to defeat his application as effectually as if he failed to state that he was the original inventor?" Again: "A strict construction of the act as it regards the public use of an invention before it is presented is not only required by its letter and spirit, but also by sound policy. A term of fourteen years was deemed sufficient for the enjoyment of an exclusive right of an invention; but if he may delay an application for his patent at pleasure, although his invention be carried into public use, he may extend the period beyond what the law intended to give him. A pretense of fraud would afford no adequate security to the public in this respect, as artifice might be used to cover the transaction. The doctrine of presumed acquiescence, where the public use is known or might have been known to the inventor, is the only safe rule which can be adopted on this subject." The last paragraph is as to the intention, in which the court say: "Whatever may be the intention of the inventor, if he suffers his invention to go into public use through any means whatsoever, without an immediate assertion of right, he is not entitled to a patent. Nor will a patent obtained under such circumstances protect his right." This view of the subject, it is considered, is a full bar to the claim of the appellants, and makes it unnecessary to consider what the case would have been upon the merits. The decision of the commissioner must be affirmed.